## TABOR v. CITY OF BUFFALO.

(Supreme Court, Appellate Division, Fourth Department. January 12, 1910.)

1. MUNICIPAL CORPORATIONS (§ 752*)—DEFECTIVE STREETS—LIABILITY.

Where an excavation in a street for sewer and water connections was made by a plumber employed by the abutting owner in pursuance of permission granted by the city department of public works, and under the control of the city engineer, and subject to a penalty for failure to restore the street to its former condition, the city was a joint actor with the owner in making the excavation. and was liable for failure to restore the street to its former condition.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1583 ; Dec. Dig. § 752.*]

2. MUNICIPAL CORPORATIONS (§ 752*)—DEFECTIVE STREETS—LIABILITY.

Where a city had notice of the original excavation in a street by an abutting owner for water and sewer connections, with the permission

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of the city, the restoration of the street to its former condition was an obligation resting on the city, and until the street was restored the duty of inspection continued, and it was not entitled to notice of the failure to properly restore the street.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1583; Dec. Dig. § 752.*]

3. MUNICIPAL CORPORATIONS (§ 791*)—DEFECTIVE STREETS—INJURIES TO TRAVELERS—LIABILITY.

Where, in an action for injuries to a traveler driving into a hole in a street, the evidence showed that an abutting owner had under permission of the city made an excavation in the street subject to a penalty for failure to restore it to its former condition, that the excavation was partly filled with frozen earth, that warm weather and rains had caused a depression filled with water, and that for 11 hours before the accident a hole existed, a charge that the jury could not as a matter of law find constructive notice on the part of the city of the existence of the hole at the time of the accident was erroneous.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 791.*]

Appeal from Trial Term, Erie County.

Action by James C. Tabor against the City of Buffalo. From a judgment for defendant, and from an order denying a new trial, plaintiff appeals. Reversed, and new trial granted.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Herman J. Westwood, for appellant.
Harry D. Sanders, for respondent.

SPRING, J. The plaintiff was injured about 8 o'clock in the evening of March 27, 1907, while driving along Rhode Island street in the city of Buffalo. He drove into a hole or excavation in the street and was precipitated to the ground over the footboard of the cart in which he was riding, sustaining injuries. Rhode Island street is an important and much-traveled street, extending practically east and west. In January, 1907, the owner of lot No. 456, on the north side of the street, obtained a permit to take water to a dwelling house from the city pipe, and also to make sewer connections, and these involved excavating in the street. After the connections were made the trench was filled up and tamped down; but the pavement cobblestones were not replaced. Part of the dirt put back in the excavation was frozen, and it was apparent as the frost disappeared the dirt would settle, leaving a hole. In the latter part of February there was a depression, and it was filled and again tamped down.

The witness Snyder, on behalf of the defendant, testified that on the 25th of March the earth had sunk, and he filed the excavation with cinders. Witnesses on behalf of the plaintiff testified the depression had existed for several days continuously before the 27th, so there was a question of fact as to the length of time the defective condition existed before the plaintiff was injured. He had been engaged all day on the 27th delivering baggage with a single rig for the Miller Transfer Company. It had rained hard all the night preceding and much during the day. When he approached the place in question he

observed it was filled with water, and there was no indication that it was anything more than a puddle of water in the pavement, and he had noticed these all day in his driving about the city. He was driving at a slow trot with a covered wagon carrying trunks and suit cases. The horse stepped into this hole and jumped, pulling the wagon forward, and the wheels sunk in the water and mud to the hubs, and the plaintiff was pitched forward and injured. The hole was a foot and a half or two feet deep and two or three feet in width, extending along the excavation toward the street curb. There is no controversy as to the existence of the hole at the time the plaintiff was injured, or that he was injured as he described, and no claim that he was negligent.

The excavation was made by the plumber employed by the owner of the premises, but in pursuance of a permit granted by the city department of public works. The work was under the control and authority of the city engineer, and the person to whom the permit was granted was required to restore the opening to as good condition as previously existed. The whole work was, therefore, intrusted to the department of public works or its engineer, and the city could protect itself from any failure on the part of the holder of the permit to comply with its provisions. In fact, a penalty is imposed for failure to meet these provisions. Chapter 4, § 30, of Ordinances. In this situation the city, therefore, is a joint actor with the owner in making this excavation.

If a person using the street properly is injured by reason of failure to restore an opening to its former condition, it is not essential for him, in order to recover for his injuries, to show notice of the defective condition either to the city or to the owner. Its restoration is an affirmative obligation, and the question in such a case is, therefore, whether the provisions of the permit have been complied with. The street was previously safe. It was opened and made dangerous, to be sure, for a lawful purpose. The safety of the public using the streets requires that while the excavation is open that it must be suitably barricaded or denoted by warning lights, and when filled it must be taken care of until it is permanently restored to its previous condition. The city had notice of the original excavation, and it was made with its permission, and until restoration has been made complete its duty of inspection continues, and it is entitled to no notice of its condition. Wilson v. City of Troy, 135 N. Y. 96, 32 N. E. 44, 18 L. R. A. 449, 31 Am. St. Rep. 817; Parks v. City of New York, 111 App. Div. 836, 98 N. Y. Supp. 94, affirmed 187 N. Y. 555, 80 N. E. 1115; Godfrey v. City of New York, 104 App. Div. 357, 93 N. Y. Supp. 899, affirmed 185 N. Y. 563, 77 N. E. 1187; Stedman v. City of Rome, 88 Hun, 279, 34 N. Y. Supp. 737; Schumacher v. City of New York, 166 N. Y. 103, 59 N. E. 773.

If I am in error in this proposition, I think the court erred in his instructions to the jury. After charging that the most important matter for them to determine was whether the defective condition had existed sufficiently long so that the city should be charged with constructive notice of its existence, he added:

"If you find that it came into the condition in which it was at the time of the accident only on that day, your verdict necessarily must be for the defendant."

The counsel excepted to this charge. One witness testified that about 9 o'clock in the morning of the day of the accident, or 11 hours preceding it, he observed the place where the accident occurred, and he describes the hole, stating that some of the cobblestones had fallen down in it, and that it was well filled up with water. In view of this testimony, the plaintiff's counsel requested the court to charge as follows:

"I ask your honor to charge the jury that they may find from the evidence that if the weather for several days previous to the acccident was warm, or warm and accompanied with some rain, they may find the conditions were such as to put the city to active inspection with relation to this trench, and they may find constructive notice to the city if they only believe the hole existed since 9:15 on the morning of the accident."

—and the court refused to do so, and an exception was taken. Ordinarily constructive notice of 11 hours prior to the accident might be inadequate. Its sufficiency depends on circumstances. Rhode Island street was an important one and much traveled. The trench where the injuries were sustained was dug and filled up in January, and partly with frozen earth. Inevitably, when rains came and the frost thawed out the earth, it would sink, and a dangerous hole be left, and this sinking would continue until into the spring of the year. For a day or two preceding the accident the weather had been moderate with some rain. On the evening of the 26th and the morning of the 27th there was warm weather, with a heavy rainfall, and the street depressions all over were filled with water the morning of the 27th and all that day. The very conditions had arisen which would soften the frozen chunks and cause the earth to settle, and the city authorities and the plumbers must have realized the effect of this heavy downpour. In view of the permit granted and the conditions referred to, I think it was error for the court to charge the jury as matter of law that they could not find constructive notice if the hole had existed only since 9:15 that morning.

There was a bad hole in the street, and the plaintiff drove into it through no lack of vigilance on his part, and he was injured. The trial judge with great detail and elaboration instructed the jury on constructive notice, making that the predominant subject submitted to them. In the first place, I think the city was not entitled to notice; and, even if it was, the court invaded the province of the jury, and unduly restricted the range of their finding, as I have stated.

I think the evidence of the conversation over the telephone by the witness Wright with some one in the department of public works was properly excluded. The evidence was incompetent under the pleadings, and there was no evidence to identify the person answering the telephone in that department.

The judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide event.

Judgment and order reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.