CARRIE F. WRIGHTER, Respondent, v. A. A. ADAMS STORES, INC., and Others, Defendants, Impleaded with the CITY OF BING-HAMTON, Appellant.

Third Department, May 13, 1931.

*Edwin H. Moody* [*Herbert H. Ray* of counsel], for the appellant.

*Hinman, Howard & Kattell* [*C. Addison Keeler* of counsel], for the respondent.

VAN KIRK, P. J. The action is to recover damages for personal injuries. The fronts of two stores, or a double store, were to be

repaired. These premises were upon one of the streets in the city of Binghamton. To do this work it was necessary that a space on the sidewalk should be used by the workmen and to protect the passing public it was necessary that a barrier or false front, as it is called, should be placed on the sidewalk in front of these premises. Application was made to the proper city authority and a permit was given to erect the false front. This was done in the following manner: A construction in the form of a tight board fence was erected on the sidewalk five feet from the front of the building. At the ends were angles and the fence carried to the side of the building. Two by four sticks were laid on the sidewalk along this line; boards eight feet long were set upright and nailed at the bottom to these two by fours. The boards used were about one inch thick. A second line of two by fours, parallel to the base, was nailed to these boards about half way up and another line about sixteen inches below the tops. At the two ends were two by fours, to which these boards were attached and these were nailed to the front of the building with nails driven diagonally through the two by fours into the mortar between the stones or bricks of the building. The stores had stone and brick fronts. Also, near the ends of this false front, two boards or braces were nailed to the tops of these upright boards and, slanting down, were in like manner nailed to the front of the building. All the nails used were eight penny. There was no anchoring or fastening of the base of this front to the sidewalk; the stability of the false front depended solely upon the shape of the front and the nails driven into dry mortar. This front was completed on Wednesday or Thursday and, after it was completed, it was inspected by the deputy commissioner of public works of the city. On the following Saturday, two or three days after the erection, a witness states that, before lunch, he was on the sidewalk in front of these premises; that he saw the false front swaying and heard it creaking. On the afternoon of that day, while plaintiff was passing, the false front collapsed and she received the injuries on account of which she claims damages in this action.

The appellant claims that this action cannot be maintained because no notice of the defective condition, as required by section 244 of the Second Class Cities Law, was given to the city; and urges that the city must have had notice of the specific defect which caused the collapse of the false front before this action could be maintained; that notice of the obstruction, without notice of the specific defect which caused the fall, is insufficient. We think this claim is without merit. Section 244 provides that no civil action shall be maintained against a city for damages for injuries

to persons sustained in consequence of any sidewalk being dangerous or obstructed, unless it appears that a written notice of the dangerous or obstructed condition of such sidewalk was actually given to the commissioner of public works. Notice to a city of a dangerous condition in a street, where the city has granted a permit to place the obstruction therein and its authorized agent has inspected it, is not a condition precedent to a right to bring an action for damages occasioned by the obstruction. (*Tabor* v. *City of Buffalo*, 136 App. Div. 258, 261; *Wilson* v. *City of Troy*, 135 N. Y. 96.) Where a city grants a permit to obstruct a sidewalk it is under a continuing duty of inspection until the obstruction is removed; it is entitled to no further notice of the condition due to that obstruction. (*Loretz* v. *City of New York*, 148 App. Div. 721, 724; *Metzroth* v. *City of New York*, 241 N. Y. 470.)

The only other point raised by the defendant city is that the evidence fails to establish any actionable negligence. The duty rested upon the city to keep this sidewalk in a condition reasonably safe for those rightfully traveling or passing thereon. This was an active duty, requiring vigilance and diligence. (*Klepper* v. *Seymour House Corp.*, 246 N. Y. 85, 95.) As between the city and the contractor or builder the duty to erect this false front rested primarily upon the builder; but, as between this plaintiff and the city, the duty rested upon the city to see that the sidewalk was reasonably safe. (*Magee* v. *City of Troy*, 48 Hun, 383; affd., 119 N. Y. 640; *Metzroth* v. *City of New York*, *supra*.) The defect which caused this front to fall was patent and observable to any competent person. It cannot be disputed that the deputy commissioner of public works was a competent person, and more competent than one of the public, to realize that, when such a construction is anchored or tied solely by eight penny nails driven into brittle mortar, a dangerous condition exists which should be corrected. It is common knowledge that, when one attempts to drive a nail into a brick or set mortar, something must yield. If the nail penetrates, the brick or mortar breaks; these will not yield space and remain firm as will wood. A passer-by saw the false front swaying and heard it creaking. The inclosure was about five feet from the front of the building; at the top the space between the false front and the real front was entirely open. The construction was plainly insecure and dangerous as against even an ordinary wind, or against any moderate force. It fell within two or three days after it was constructed. We think it was a question of fact for the jury, under the conditions described in the evidence, to decide whether or not the defendant was guilty of negligence in allowing this condition to exist. The fall of the structure is

some evidence that it was insufficiently supported and tied and that there was negligence on the part of whoever had charge of it. (*Haefeli* v. *Woodrich Engineering Co.*, 255 N. Y. 442, 446; *Hooey* v. *Airport Construction Co.*, 253 id. 486, 489.) In this case there was no evidence of storm or tempest or external violence or force of any kind which caused the false front to fall. The jury could find that the construction was faulty, that the resulting condition was dangerous and that the city was negligent. (*Uggla* v. *Brokaw*, 117 App. Div. 586; *McNulty* v. *Ludwig & Co.*, 153 id. 206, 213.)

The judgment and order should be affirmed, with costs.

All concur.

Judgment and order affirmed, with costs.